REYNOLDS ELECTRICAL & ENGINEERING CO. *v.* UNITED STATES

No. 7983.—

Entry No. 138.

(Decided April 13, 1951)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Jerome Vale* and *Chauncey E. Wilowski,* special attorneys), for the defendant.

FORD, Judge: The merchandise, the dutiable value of which is here involved, is invoiced as "300 KVA Transofrmers [sic] 3 Phase, 60-Cycle 44000/2400/600 Volts indoor Type." The merchandise was invoiced at a value of $3,350, plus a commission of $1,400, entered at a total value of $4,750, and "Appraised as a whole at $6750.00 US Funds net packed."

Counsel for the plaintiff raises no question concerning the item of $1,400 paid by the Chicago Electric Co. of Chicago to Guy Morton of Canada for his services in the procurement of the involved merchandise, this item evidently being recognized as a selling commission as distinguished from a buying commission, and therefore a dutiable item.

The record shows that the plaintiff herein was desirous of purchasing merchandise such as or similar to that here involved and, being unable to locate the same, engaged the services of the Chicago Electric Co. for that purpose. For its services in locating and procuring the aforesaid merchandise, the Chicago Electric Co. charged the plaintiff herein the sum of $2,000, and this item of $2,000, the plaintiff contends, is a buying commission, and therefore not a dutiable item.

The only evidence before me is in the form of affidavits, a customs agent's report, and other documentary evidence. The first affidavit is that of a project manager of the Reynolds Electrical & Engineering Co., Inc., of El Paso, Tex., in which affiant states:

Prior to the importation of the transformers, my company had asked Chicago Electric Company, Chicago, Illinois, to obtain three transformers of this particular type for this job. Chicago Electric Company located the transformers through G. H. Morton, Calgary, Alberta, at the Undersill Gold Mining Company, Beardmore, Ontario. I was asked to inspect the transformers to see whether they would meet our requirements.

I flew to Chicago and learned from the Chicago Electric Company that they had offered G. H. Morton the sum of $4,750.00 for the three transformers including Morton's commission; and that Chicago Electric Company wanted to be paid in addition, a commission of $2,000.00. I then flew to Port Arthur, Ontario, which is near the mine of the Undersill Gold Mining Company where the transformers were located. I inspected them and found that they would be suitable.

I then arranged for the transformers to be exported from Canada for shipment to our project in Albuquerque, New Mexico, through the Port of Duluth, Minnesota.

The second affidavit is that of Robert C. Kaska, assistant treasurer of Chicago Electric Co., in which the affiant states:

On May 27th, 1947, we were requested by wire from Reynolds Electrical & Engineering Co., Inc., to locate three 150 K. V. A. or larger, new or rebuilt, transformers 44,000 volt primary to 13,200 volt secondary. We searched for such apparatus but found nothing desirable. On December 18th, 1947, Reynolds Electrical & Engineering Co., Inc., wired us for transformers of any capacity and secondary voltage. We had spent and continued to spend considerable time and effort in locating the exact type of transformers desired. We finally located units of lower secondary voltage, i. e., 2400/600 volts and advised Reynolds Electrical & Engineering Co., Inc., of same. They subsequently authorized us to negotiate for these units. We advised them that the transformers which we had located were in Canada and seemed to be quite old, but Reynolds were nevertheless interested in the transformers and, following several phone conversations, we asked for the sum of $2,000.00 to be paid to us for our services and expenses for handling the transaction. We received the sum of $2,000.00 in due course.

Mr. F. L. Mulberry, Jr., Albuquerque manager for Reynolds Electrical & Engineering Co., Inc., then came to our office and we continued negotiations by telephone with Mr. G. H. Morton, Calgary, Alberta, who asked for a price of $5,000.00 for the three transformers. This price included many accessories which the Reynolds Electrical & Engineering Co., Inc., did not need and therefore requested a reduction. Thereafter, Mr. Mulberry went to the Beardmore, Ontario, mine of the Undersill Gold Mining Company to inspect the transformers and found them suitable. We were then able to obtain an allowance of $250.00 which reduced the purchase price to $4,750.00, including Morton's commission of $1,400.00. Throughout this entire transaction we did not accept any of the responsibility regarding loading, shipping, documents, guarantee of equipment, etc., as our role was only that of agent for Reynolds Electrical & Engineering Company. The $2,000.00 which was paid to us was for services rendered, included our costs and expenses. We performed no labor whatever on the transformers themselves.

The next affidavit is signed Soul Clinic, Inc., by G. H. Morton, in which the affiant states:

We purchased three 300 Kw. 44000/38000 to 2400/600 volt second hand transformers from the Undersill Gold Mining Co., Beardmore, Ontario.

These transformers were resold to the Reynolds Electrical & Engineering Co., Inc., El Paso, Texas.

We were paid $4750.00 by the Chicago Electric Co., who handled the details of the sale with us. We understood that they were acting for Reynolds Electrical & Engineering Co., Inc., who arranged to inspect the transformers before shipment.

We offered these transformers at the same price to others in Canada and the United States.

I am familiar with all the details of this transaction from this end as I handled the sale personally. I am the manager of Soul Clinic Inc., formerly Guy Morton Co.

The original price quoted was $5,000.00 but there was a reduction because some details were not required nor shipped.

Exhibit 4 is customs Form 3347–A, being "Declaration of Consignee When Entry Is Made By An Agent," which shows that L. J. Reynolds represented the Reynolds Electrical & Engineering Co., that the seller or shipper of the merchandise was Guy Morton Co. of "Calgary, Alta., Can.," and that the merchandise was entered at $4,750.

Exhibit 5 is an invoice from Chicago Electric Co. to Reynolds Electrical & Engineering Co., which, after describing the merchandise, shows a price of $6,750 net, "Less Received On Account" $2,000, $4,750 net.

Exhibit 6 is a customs agent's report. Some of the statements contained in this report are not in accord with the statments hereinbefore quoted from the affidavits. The customs agent states that he visited Mr. Clausing of the Chicago Electric Co. and that Mr. Clausing stated:

\* \* \* that his firm has had business relations with Guy Morton for some time; that Morton advises the Chicago Electric Company of electrical equipment in Canada that is available for sale, and the Chicago Electric Company likewise notifies Morton of similar equipment available in the United States; that in the usual course of business Morton notified the Chicago Electric Company of the availability for sale of the three used transformers in question which were the property of and located on the premises of the Undersill Gold Mining Company at Beardmore, Ontario, Canada; that the Chicago Electric Company, in the usual course of business, advertised these transformers in trade papers; that the Reynolds Company answered one such advertisement and that the transformers were eventually sold to that firm at a net price of $6750.00 (U. S.).

The details respecting the sale of the transformers in question are as follows: Certain of the details were discussed by telephone. The Reynolds Company informed the Chicago Electric Company of their interest in the equipment and transmitted to the Chicago Electric Company, by letter dated January 30, 1948, check in amount of $2000, stating that this amount was a "down payment" on the transformers, said amount to be returned to the Reynolds Company in case the transformers did not prove acceptable upon inspection.

On January 31, 1948, Guy Morton advised the Chicago Electric Company, by telegram, that the Reynolds firm could proceed with inspection as he (Morton) had an option from the Undersill Gold Mining Company. Subsequently, Mr. F. L. Mulberry, Jr., a representative of the Reynolds firm, proceeded to Canada, inspected the equipment and accepted same at the price of $6750.00 on behalf of the Reynolds firm, in the condition and as located on the premises of the Undersill Company at Beardmore. Mr. Mulberry made all arrangements for the transfer of the transformers from their location on the mining company premises to Albuquerque, New Mexico, by motor truck. \* \* \* In his letter dated February 6, 1948, Mr. Mulberry states that his firm was then buying the transformers directly from the Chicago Electric Company; that the Chicago Electric Company was in turn buying this equipment through their agent, Guy Morton, and that Guy Morton's deal was direct with the Undersill Gold Mining Company.

The remainder of this customs agent's report is devoted to that which the agent apparently considered a violation of sections 481, 482, 484, and 485 of the Tariff Act of 1930, as amended. It is observed that although more than one-half of this report is devoted to state-

ments concerning the violation of the above-stated sections of the Tariff Act of 1930, counsel for the defendant, in his brief filed herein, makes no mention of this phase of the report, but relies entirely upon the portion of the report hereinbefore set out.

In view of the fact that Mr. Kaska states in his affidavit that he was in charge of this transaction for the Chicago Electric Co., I am of the opinion that his sworn statements are entitled to greater weight than the information which the customs agent states he obtained from Mr. Clausing, which statements are without the sanction of an oath. *United States* v. *Canada Packers, Ltd.*, 8 Cust. Ct. 697, Reap. Dec. 5624.

The invoice before me shows the sale of the involved merchandise by Guy Morton Co. of Canada to Chicago Electric Co. of Chicago, and that the sum paid therefor was $4,750, which includes an item of $1,400 paid to Guy Morton as commission. Defendant's exhibit 5 is an invoice from Chicago Electric Co. to Reynolds Electrical & Engineering Co. for this same merchandise which shows a figure of $6,750 net, "LESS RECEIVED ON ACCOUNT 2000.00, $4750.00 NET." In this connection, it should be remembered that the project manager of the Reynolds Electrical & Engineering Co. stated in his affidavit that the purchase price of this merchandise was $4,750 and that the item of $2,000 was paid to the Chicago Electric Co. as a commission; also, the statement of the assistant treasurer of the Chicago Electric Co. that following several telephone conversations regarding the procurement of these transformers, his firm asked for the sum of $2,000 to be paid to it for its services and expenses for handling this transaction, and that in due course it received a check for this amount.

Since the invoice from Chicago Electric Co. to the Reynolds Electrical & Engineering Co. represents a sale of the involved merchandise between two parties within the United States, the price paid and received therefor cannot be considered as any evidence of a foreign or export value for the merchandise covered thereby. The weight of the evidence before me supports a holding that this item of $2,000 represents a commission paid by the purchaser, the Reynolds Electrical & Engineering Co. to the Chicago Electric Co. for the services of the latter in locating these transformers and arranging for the purchase thereof by the Reynolds Electrical & Engineering Co.

This item of $2,000, being money paid by the purchaser of the involved merchandise to the Chicago Electric Co. for its services and expenses in locating and arranging for the purchase of the involved transformers, is clearly a buying commission, and as such is not a dutiable item. *Wool Novelty Co., Inc.* v. *United States*, 21 Cust. Ct. 265, Reap. Dec. 7600; *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007; *United States* v. *Bauer et al.*, 3 Ct. Cust. Appls. 343, T. D. 32627; *Vandiver* v. *United States*, 6 Ct. Cust. Appls. 80, T. D. 35327;

*United States* v. *S. S. Kresge Co. et al.*, 26 C. C. P. A. (Customs) 349, C. A. D. 39; and *United States* v. *Alfred Kohlberg, Inc.*, 27 C. C. P. A. (Customs) 223, C. A. D. 88.

Based upon the weight of the evidence before me and a consideration of the applicable authorities, I find the proper dutiable foreign and export value of the transformers involved in this appeal to be $4,750, net packed, as alleged by the plaintiff. Judgment will be rendered accordingly.