## CABINET CRAFTSMEN, INC. *v.* UNITED STATES

**No. 8001.—**

Entry No. 791964, etc.

## Second Division, Appellate Term

(Decided May 21, 1951)

*Siegel, Mandell & Davidson (Sidney Mandell* of counsel) for the appellant.

*David N. Edelstein,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the appellee.

Before LAWRENCE, FORD, and EKWALL, Judges

FORD, Judge: This is an application for review filed under the provisions of title 28 U. S. C. § 2636 (a) and seeks a reversal of the decision of the trial court reported as Reap. Dec. 7792. The merchandise involved consists of furniture frames exported from Italy and entered at the port of New York.

The merchandise was entered on the basis of the invoiced values and appellant contends that these values represent the export value of the merchandise. With the exception of six armchairs covered by invoice item No. 1, reappraisement No. 140113–A, the merchandise was appraised at higher unit values on the basis of cost of production, as defined in section 402 (f) .of the Tariff Act of 1930. The six armchairs above referred to were appraised on the basis of export value, but at values higher than the entered values.

The trial court found that there was no foreign value for the involved merchandise. This finding is amply supported by the record, and is accordingly affirmed.

As supporting the invoiced values as the export values, counsel for appellant offered an affidavit by one Maurizio Bettoja, in which the affiant, among other things, states:

I further swear under oath that the prices appearing on invoices to the Cabinet Craftsmen, Inc. of New York, * * * and which invoices cover certain described furniture frames by name and by number represent the free offering price and true market value of these particular described frames at the time of

exportation and that we were and are prepared and willing to sell in the usual wholesale quantities and in the ordinary course of trade, the identical described furniture frames at the prices at which they were sold and invoiced to the Cabinet Craftsmen, Inc. of New York.

In *Golding Bros., Co., Inc.* v. *United States*, 4 Cust. Ct. 876, Reap. Dec. 4929, in construing language very similar to that set out above, this court said:

> The mere statement of plaintiff's witness that the exporter of the instant merchandise was prepared and willing to sell identical merchandise to others for exportation to the United States is not sufficient, in my judgment, to warrant a definite finding of the existence of an export value within the statutory definition of such value as set forth in section 402 (d) of the Tariff Act of 1930.
>
> \*　　\*　　\*　　\*　　\*　　\*　　\*
>
> \* \* \* In my opinion, the broadest interpretation that can be accorded the above-quoted testimony of plaintiff's witness is that sales for export of identical cotton mattress tickings to others than the plaintiff herein would have been made if requests for such merchandise had been received from other prospective purchasers in the United States. In other words, said witness presents evidence of a hypothetical market, or what the exporting firm would have done if confronted by conditions not shown to have existed. Certainly, such evidence can have no probative value in determining proper dutiable value of imported merchandise.

The above decision was affirmed by an appellate division of this court in *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 877, Reap. Dec. 5196. See also *United States* v. *Oceanic Trading Co.*, Reap. Circ. 3233.

To the same effect was the holding of our appellate court in *Transatlantic Shipping Co., Inc.* v. *United States*, 28 C. C. P. A. (Customs) 19, C. A. D. 118:

> \* \* \* The statement made in the affidavit dated November 23, 1937, that the manufacturer is willing to sell to anyone at the same price charged to the Absorbo Beer Pad Co., Inc., is no proof of market value or price at the time of exportation of the merchandise, as required by the statute.

From the foregoing, it would appear to be well settled that evidence of a willingness and ability to sell merchandise cannot be accepted as a compliance with the provisions of section 402 of the Tariff Act of 1930 that "such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade \* \* \*."

The trial court and counsel for appellee herein stressed the fact that Mr. Bettoja, the affiant in collective exhibit 1:

> \* \* \* was the son-in-law of Jacob Maslow and the brother-in-law of Louis Maslow, who, it appears, owned, operated, controlled, or had at the time of exportation of the merchandise involved an interest in the Italian Furniture Frame Corp. mentioned in the affidavit, collective exhibit 1. It also appears that he was the brother-in-law of Jean Maslow, a member of the firm of Cabinet Craftsmen, Inc., the importer in the cases at bar.

In our opinion, the situation would not have been any different had there existed no relationship between the parties mentioned. The trial court found that the record indicates "* * * the entire output of the exporter was shipped only to these firms or to firms in which members of the Maslow family were interested." Had the record indicated that the entire output of the exporter herein was shipped only to a limited number of customers entirely unrelated to the exporter, the evidence offered would still not have been sufficient to establish the contentions of the appellant herein.

On this phase of the case we are in agreement with the finding of the trial court, as follows:

I conclude, therefore, that the plaintiff has failed to establish the existence of export value for all of the items involved except the six armchairs referred to in the first paragraph of this opinion. These latter pieces, it appears, were appraised on the basis of export value of similar merchandise, and, as the plaintiff has failed to offer evidence of the incorrectness of such values, I hold that the statutory presumption in favor of the appraised values thereof has not been overcome.

Counsel for the respective parties have agreed that there is no United States value for the involved merchandise, and this brings us to the question of the cost of production. On this, we have the affidavit of Mr. Bettoja in which he states:

That I have personal knowledge of the cost of all materials entering into the fabrication of the frames in question and also have personal knowledge of the items of usual expenses and profit which form a part of the basis of our selling prices. * * * That I am attaching herewith the cost of production of the items in question covered by sales to the Cabinet Craftsmen, Inc. of New York, which * * * cost of production figures were taken from my official book of record and conform with its registrations.

As evidence of such cost of production I am attaching herewith lists of "Cost of production" of all the items covered by the invoices noted hereinabove.

An examination of collective exhibits 2 to 9, inclusive, shows that the production costs stated in collective exhibit 1 are in accord with the cost records, invoice books, books of account, and other records of the exporter. However, it is made clear from the evidence before us that such records and books do not reflect the true situation with reference to the costs, expenses, and profit involved in the production of the instant merchandise. This being true, we must hold that the evidence offered by appellant fails to establish values for the merchandise based upon the cost of production which are different from the values found by the appraiser.

Based upon an examination of the record before us, we find as facts:

1. That the merchandise in question consists of knocked-down furniture frames exported from Italy and entered at the port of New York.

2. That at the dates of exportation of the involved merchandise there was no merchandise such as or similar to that in question sold or freely offered for sale for consumption in Italy.

3. That at the date of exportation of the six armchairs identified as item No. 1 on the invoice covered by reappraisement No. 140113–A the market value or price at which such or similar merchandise was freely offered for sale in accordance with the provisions of section 402 (d) of the Tariff Act of 1930 was the value found by the appraiser.

4. That as to all of the merchandise covered by this case, other than the armchairs above referred to, there was at the dates of exportation thereof no merchandise such as or similar thereto freely offered for sale or sold in Italy for exportation to the United States.

5. That as to all the merchandise covered by this case, other than the armchairs above referred to, there was at the dates of exportation thereof no merchandise such as or similar thereto sold or freely offered for sale in the principal market of the United States.

6. That as to all of the merchandise covered by this case, other than the armchairs above referred to, the cost of production thereof was in each instance as found by the appraiser.

We conclude as matter of law:

1. That the proper basis of value for the six armchairs above referred to is export value, and that such value is the appraised value.

2. That as to the remainder of the merchandise covered by this case the proper basis of value is cost of production, and that such value in each case is that found by the appraiser.

The decision and judgment of the trial court are accordingly affirmed.