(Reap. Dec. 8135)

ALLIED FOOD CORP. OF AMERICA v. UNITED STATES

Entry No. 720423.

(Decided June 26, 1952)

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Harry A. LeBien* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

EKWALL, Judge: This is an appeal for reappraisement of guava jelly packed in cases of 48 tins to the case, each tin containing approximately 15 ounces, exported from Cuba on or about August 24, 1946. It was invoiced and entered at $6 per case and appraised at $8.70 per case, net, packed.

It was stipulated at the trial that on or about the date of exportation no export value for this merchandise existed and if the court should find that no foreign value existed, the United States value for such or similar merchandise was $7.45 per case, net, packed.

The sole question involved herein is, therefore, whether or not a foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, existed on or about the date of exportation of the merchandise.

Frank E. Hurd, president of the plaintiff corporation, testified that he personally arranged for purchases of guava jelly by his firm from Industrias Ferro, S. A., of Pinar del Rio, Cuba, and in 1944, 1945, and 1946, made investigations covering substantially all of Cuba and determined that no one was making American-type guava jelly similar to that made by Industrias Ferro, S. A. He explained that American-type jelly is made, according to United States Food and Drug Administration specifications, of 45 per centum fruit juices of established solids and 55 per centum sugar, which are cooked to not less than 65 per centum total solids. Cuban guava jelly or paste, he said, was a heavy viscous material practically like gum, running from 75 to 85 per centum solids, and entirely dissimilar to the American-type guava jelly. On cross-examination, Mr. Hurd testified that the firm of Hijos de Pio Ferro, S. A., had a number of retail and wholesale outlets in the Province of Pinar del Rio, Cuba, and that it is a mer-

chandising subsidiary of the Ferro interests. However, he did not know the corporate or interlocking relationships among the Ferro enterprises.

Plaintiff introduced into evidence an affidavit of Sixto Ferro, manager-treasurer of Industrias Ferro, S. A., dated November 20, 1951 (plaintiff's collective exhibit 1). It is stated therein that the guava jelly manufactured by the firm and sold to plaintiff contained 55 per centum refined sugar and 45 per centum guava juice; that it was not freely offered for sale for export to the United States in 1946 but was offered only to the plaintiff; that no other guava jelly similar to the firm's product was sold during 1946 for home consumption in Cuba by others. It is stated further:

That during all of 1946 Industrias Ferro, S. A. offered and sold the product in the Provinces of Cuba, except the Province of Pinar del Rio, only to consumers and retailers; that in the Province of Pinar del Rio, Industrias Ferro, S. A. sold only to a wholesale distributor, Hijos de Pio Ferro, S. A., and refused to sell to retailers or consumers; that Hijos de Pio Ferro, S. A. were permitted by Industrias Ferro, S. A. to resell only in the Province of Pinar del Rio and were prohibited from reselling in the other provinces of Cuba;

Attached to the affidavit is a list of all sales of the product in Cuba in 1946.

Defendant introduced into evidence a report of Treasury Representative Joseph H. Dillon, dated January 31, 1947 (defendant's exhibit A). Mr. Dillon states that the information therein was obtained from an inspection of the records of the firm of Industrias Ferro, S. A., and from interviews with Mr. Roberto Leon Figueredo, attorney for the firm, and Mr. Sixto Ferro, manager-treasurer. The merchandise covered by the report consisted of guava paste in slabs and bars, and guava jelly packed in 24/2½ tins and 48/1 tins to the case.

As to export value, it is stated:

According to Mr. Ferro, the merchandise is freely offered for sale and sold to all purchasers, without restrictions as to quantity or class of buyer. No evidence was found in the records contrary to this statement.

As to foreign value, it is stated:

Messrs. Ferro and Leon claimed that the merchandise is freely offered for sale and sold to all purchasers in the home market, without restrictions with respect to the class of buyer or quantity purchased.

Attached to the report is a list of sales of guava jelly and guava paste in Cuba from January 4, 1945, through December 31, 1946.

The Government claims and the plaintiff denies that this evidence establishes that a foreign value for this merchandise existed in Cuba in 1946.

It is obvious that the statement in the report of Treasury Representative Dillon that, according to Mr. Ferro and Mr. Leon, the merchan-

dise is freely offered and sold to all purchasers without restriction in the home market, and the statement in Mr. Ferro's affidavit that the merchandise is sold only to Hijos de Pio Ferro, S. A., in the Province of Pinar del Rio and elsewhere only to consumers and retailers, are contradictory. It has been held that sworn statements in an affidavit are entitled to greater weight than information obtained in an interview by a customs agent. *Reynolds Electrical & Engineering Co.* v. *United States*, 26 Cust. Ct. 638, Reap. Dec. 7983.

Moreover, there is intrinsic evidence in the instant case which indicates that the affidavit is more accurate. The report refers not only to guava jelly but to guava paste, while the affidavit relates specifically to guava jelly, the merchandise involved herein. In the report, it is stated under export value that according to Mr. Ferro, the merchandise was freely offered and sold to all purchasers (presumably for export). However, it is stated in the affidavit that the merchandise was not freely offered and sold to all purchasers for export and it has been stipulated by counsel that no export value existed. If the statement in the report as to export value is erroneous, as counsel have apparently agreed, a similar statement as to foreign value may also be erroneous. As plaintiff points out in its brief, Mr. Ferro and Mr. Leon may not have understood fully the scope of the questions which resulted in the statement that the merchandise was freely offered and sold to all purchasers for home consumption, especially as such questions related to the provisions of a United States statute with which they may have been unfamiliar.

It is stated in the affidavit that Industrias Ferro, S. A., offered and sold its product in the Province of Pinar del Rio, Cuba, only to a wholesale distributor, Hijos de Pio Ferro, S. A., and elsewhere in Cuba only to consumers and retailers. This is corroborated in part by the lists of sales attached to the affidavit and to the report. Sales were made to Hijos de Pio Ferro, S. A., at Pinar del Rio, Consolacion del Sur, San Juan, and Mendoza. Mr. Hurd testified that these towns are located in the Province of Pinar del Rio. This is indicated also by the maps of Cuba in the Rand McNally-Cosmopolitan World Atlas and the Rand McNally Commercial Atlas. Sales to others than Hijos de Pio Ferro, S. A., were to purchasers located in such places as Havana, Camaguey, Cardenas, Ciego de Avila, Guanajay, Guines, Holguin, Manzanillo, Regla, and Santa Clara, which are shown by the maps to be outside the Province of Pinar del Rio. It also appears that the sales to Hijos de Pio Ferro, S. A., were for the most part in quantities of from 10 to 25 cases. Sales to others were in from very small quantities to 25 cases, but the greater number of sales was in amounts of less than 10 cases.

Defendant claims that the sales to Hijos de Pio Ferro, S. A., should not be considered on the ground that they were so-called "wash" sales to a subsidiary. Since the record does not establish the relationship between Industrias Ferro, S. A., and Hijos de Pio Ferro, S. A., it cannot be held that sales by the former to the latter must be disregarded in determining whether or not a free market existed.

I conclude that the weight of the evidence establishes that Industrias Ferro, S. A., offered and sold its product in the provinces of Cuba, except the Province of Pinar del Rio, to consumers and retailers only, and in the Province of Pinar del Rio to Hijos de Pio Ferro, S. A., only, and that the latter firm was permitted to resell only in the said Province of Pinar del Rio.

It is well established that where restrictions are imposed either as to resale or the free use or dominion over the merchandise, or where sales are confined to selected purchasers or classes of purchasers, the market is controlled. *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, T. D. 39158; *United States* v. *H. W. Robinson & Co. et al.*, 19 C. C. P. A. (Customs) 274, T. D. 45436; *United States* v. *Half Moon Mfg. & Trading Co., Inc.*, 28 C. C. P. A. (Customs) 1, C. A. D. 115; *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. (Customs) 131, C. A. D. 262; *United States* v. *Heemsoth-Kerner Corp.*, 31 C. C. P. A. (Customs) 75, C. A. D. 252.

In the case last cited, the merchandise was offered by the importer to consumers and users outside of the territories allotted to distributors, and to distributors selected by it, who were obliged to sell within specified districts to consumers and users only. The court said that although it appeared that the merchandise was freely offered and sold to all purchasers in some parts of the United States, it was not so offered and sold to purchasers in the territories allotted to distributors. It was held that the market was controlled and no United States value was found.

In the instant case, since the merchandise was offered only to retailers and consumers in the provinces of Cuba other than the Province of Pinar del Rio and in Pinar del Rio only to Hijos de Pio Ferro, S. A., under certain restrictions, the market is controlled and no foreign value can be found.

In view of the stipulation of counsel, I find that the proper value of the merchandise herein is the United States value of $7.45 per case, net, packed.

On the record herein, I find as facts:

1. That the merchandise involved herein consists of American-type guava jelly, packed 48 tins to the case, each tin containing approximately 15 ounces, exported from Cuba on or about August 24, 1946.

2. That the merchandise was invoiced and entered at $6 per case and appraised at $8.70 per case, net, packed.

3. That on or about the date of exportation of the within merchandise, Industrias Ferro, S. A., the manufacturer, offered and sold its product in the provinces of Cuba, except the Province of Pinar del Rio, to consumers and retailers only, and in the Province of Pinar del Rio to Hijos de Pio Ferro, S. A., only, and that the latter firm was permitted to resell only in the said Province of Pinar del Rio.

4. That no other guava jelly similar to the product involved herein was produced or offered or sold by others in Cuba at or about the date of exportation of the within merchandise.

5. That on or about the date of exportation of the within merchandise, the United States value, as that value is defined in section 402 (e) of the Tariff Act of 1930, for such or similar merchandise was $7.45 per case, net, packed.

I conclude as a matter of law:

1. That the United States value, as that value is defined in section 402 (e) of the Tariff Act of 1930, is the proper basis for determining the value of the merchandise involved herein.

2. That such value on or about the date of exportation of the within merchandise was $7.45 per case, net, packed.

Judgment will be rendered accordingly.