(Reap. Dec. 8317)

BLUEFRIES NEW YORK, INC. *v.* UNITED STATES

Entry No. 825084–1/2.

(Order dated June 21, 1954)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

ORDER

EKWALL, Judge: This appeal for reappraisement involves chocolates in various shapes and forms, shipped from Holland to New York on or about March 15, 1952, by C. J. Van Houten & Zoon, N. V. (hereinafter called the manufacturer) to C. J. Van Houten & Zoon, Inc. (hereinafter called the importer). The articles were invoiced, entered, and appraised as follows:

| Articles | Invoiced and entered value (per carton) U. S. currency | Appraised value (per tablet or bar) Dutch florins |
|---|---|---|
| 15 cartons, each containing 18 boxes holding 12/4 oz. milk chocolate tablets per box. | $23. 25 | 0. 49 |
| 5 cartons, each containing 18 boxes holding 12/4 oz. bittersweet chocolate tablets per box. | 24. 15 | 0. 49 |
| 15 cartons, each containing 18 boxes holding 12/4 oz. coffee milk chocolate tablets per box. | 23. 32 | 0. 49 |
| 100 cartons, each containing 24 boxes holding 24/1 ½ oz. milk chocolate bars per box. | 23. 50 | 0. 225 |
| 125 cartons, each containing 24 boxes holding 24/1 ½ oz. bittersweet chocolate bars per box. | 24. 45 | 0. 225 |
| 40 cartons, each containing 8 boxes holding 4 sq. boxes of 350 grams of bittersweet chocolate pastilles per box. | 18. 22 | 2. 36 |
| | Less nondutiable charges of $225.97 | (each sq. box of 350 grams) All items less 1% cash discount, plus cost of export cartons. |

The plaintiff claims that the entered values represent the proper dutiable values of the merchandise and that such values are the export values, as defined in section 402 (d) of the Tariff Act of 1930. The appraised values are apparently based upon foreign value, as defined in section 402 (c) of the said tariff act, as amended by the Customs Administrative Act of 1938.

At the trial, plaintiff offered in evidence a number of affidavits executed in Holland, to which are attached certain documents, hereinafter referred to. Defendant called Lars O. Odden, examiner of merchandise, and produced two reports of the American consulate general in Amsterdam, Holland, and certain chocolates and wrappers. Translations have been appended to all of the documentary evidence not in the English language.

Plaintiff's exhibit 1 is an affidavit of G. J. Van Mesdag, managing director of the manufacturer, to which are attached copies of letters from three firms in Holland and the replies thereto. Mr. Van Mesdag stated that he has supervised the manufacture and sale of Van Houten products for over 35 years and is familiar with the transaction involved herein. After listing the imported articles and stating that they were sold at the invoice prices, the affidavit continues:

* * * that those [prices] were the prices at which we freely offered such merchandise to all purchasers for exportation to the United States, in the principal markets of Holland, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, c. i. f. New York.

My Company, C. J. Van Houten & Zoon, N. V. has at all times been ready and willing to sell its products to all purchasers in the United States at the same prices at which it sells such products to C. J. Van Houten & Zoon, Inc. My company has no written or oral agreement of any kind confining its sales to the United States to C. J. Van Houten & Zoon, Inc. or to any other purchaser or purchasers. My company has no exclusive agreement with C. J. Van Houten & Zoon, Inc., New York, or anyone else in the United States.

\*       \*       \*       \*       \*       \*       \*

The prices at which we offered our products to the companies just mentioned, as well as to all other purchasers for exportation to the United States, were at all times the same as the prices at which we offered and sold our products to C. J. Van Houten & Zoon, Inc., New York.

The letters attached to the affidavit consist of inquiries in regard to chocolate articles for exportation to the United States and offers by the manufacturer. The prices quoted for merchandise similar to that involved herein were the same as the entered values, except that in one case a commission of 3 per centum was added.

Mr. Van Mesdag also stated that the products offered for export to the United States and those sold for home consumption in Holland

were not the same. He listed differences in the composition of the items, of which the following is an illustration:

MILK CHOCOLATE TABLETS AND BARS

| Home Consumption | | Export | |
|---|---|---|---|
| Cocoamass | 12.8% | Cocoamass | 11.8% |
| Sugar | 41.4% | Sugar | 40.8% |
| Milkpowder | 24.4% | Milkpowder | 21.2% |
| Cocoabutter | 21.4% | Cocoabutter | 26.2% |

He explained that the tablets for home consumption weighed 100 grams each and the bars 45 grams, whereas the tablets sold for export weighed 113.4 grams and the bars 42.52 grams. The number of tablets or bars in the boxes sold for home consumption was different from the number in the boxes sold for export. Moreover, according to the affiant, his firm's competitors do not manufacture bars or tablets in the same way as those which his company exports to the United States, nor do they pack for home consumption the same number of bars or tablets per box as his firm does for exportation.

The second document presented in evidence, exhibit 2, is an affidavit of Daniel Vonk, stating that he has been general manager of the manufacturer for 18 years and is familiar with its selling practices in Holland, which he explained as follows: The manufacturer does not sell its products for home consumption to everyone, but only to selected purchasers. In some provinces, sales are made only to selected wholesalers and a number of selected retailers, and in all other territory sales are made to retailers only. The selected wholesalers are not permitted to sell outside their own districts and, even within their districts, must sell at prices fixed by the manufacturer. Retailers sell only to actual consumers and at prices fixed by the manufacturer. Prices for home consumption in Holland depend upon the category of the buyer, and different prices for the same merchandise prevail for different groups. Except for the fact that some competitors have their own retail shops, their selling practices are the same as those of the manufacturer herein. Copies of price lists, showing the respective prices at which the wholesalers and the retailers may sell, are attached.

Plaintiff's exhibits 3, 4, 5, and 6 are affidavits of partners or officers of the selected wholesale firms to which the manufacturer sells for home consumption. According to these statements, each firm has the sole and exclusive right to sell Van Houten products in the territory assigned to it, except for a few selected customers to whom the manufacturer sells directly. It is understood that sales cannot be made at prices less than those established by the manufacturer and that a failure to comply with the price lists would result in a loss of the right to buy any more goods from the manufacturer. That con-

dition has prevailed for 18 years. Price lists of the manufacturer containing purchase and sales prices are attached to each affidavit.

Defendant's witness, Lars O. Odden, testified that he had examined the merchandise involved herein and was familiar with chocolate imported from this manufacturer. To his knowledge, none has been brought in by anyone other than the importer. He identified certain chocolates and wrappers as being representative of the imported merchandise and stated that the wrappers contained the words "Distributed by C. J. Van Houten & Zoon, Inc., New York, N. Y."

Defendant's collective exhibit A is a report made by John J. Ingersoll, American vice consul in Amsterdam, Holland, dated August 11, 1952. This report states that the Netherland equivalent for 1½-ounce chocolate bars is "chocolade repen" of 45 grams, and for 4-ounce chocolate tablets is "chocolade tabletten" of 100 grams, and that the 350-gram boxes of pastilles exported to the United States are comparable to the 350-gram boxes sold domestically. The report also states that there is no difference in the cost of the wrappers on the articles sold for home consumption and on those sold for export, but that the number of articles to a box is not the same. There is also a difference in the composition of the chocolate due to the taste preferences of the American consumer. The report adds, "it is the opinion of Van Houten that, although the two types of chocolate cannot be called identical, they positively meet the qualification 'similar.' "

The report goes on to state that there is no written agreement between the manufacturer in Holland and the importer and that, according to the former's representative, it had been pointed out to the latter that it has no exclusive distribution rights in the United States.

Defendant's collective exhibit B is a report to the State Department from Amsterdam, Holland, dated January 24, 1952, stating that a representative from the consulate general interviewed the export manager of the manufacturer and obtained the following information: Merchandise such as that exported to the United States is freely offered for sale for home consumption in the Netherlands, with no restrictions on the buyers, except that they are encouraged to sell at prices established by the manufacturer. A cash discount of 1 per centum is freely offered to all buyers, but other discounts depend upon the quantity purchased. Sweetened chocolate is generally sold in wholesale quantities of from 5 to 20 pounds. A copy of a price list showing purchase and selling prices is attached to the report.

On this record, the court is asked to find the value of the imported merchandise in accordance with section 402 of the Tariff Act of 1930, as amended. The appraised values are presumptively the dutiable values, but plaintiff claims that they are incorrect on the ground that they are based upon foreign value and that no foreign value exists

because such or similar merchandise is not sold for home consumption in Holland and because the market there is restricted.

Plaintiff has shown that the composition of the chocolate sold for home consumption and of that sold for export is slightly different; that the weights of the tablets and bars vary; and that the number of pieces per box is different. However, the ingredients in the articles are the same with only slight differences in the percentages of each, apparently to cater to American taste preferences. There is no evidence that the process of manufacture was any different, and, obviously, the uses are the same. According to the report of the American vice consul (defendant's collective exhibit A), it was the opinion of the manufacturer that the products were similar.

The slight variances in the composition, size, and packing of the imported merchandise and that sold for domestic consumption do not establish that the two are dissimilar within the meaning of the tariff act. *United States* v. *The American Bluefriesveem, Inc.* (*Van Houten Co.*), 22 C. C. P. A. (Customs) 67, T. D. 47063; *Scharf Bros. Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 347, T. D. 43089.

As to sales practices in the home market, there is a statement in the report of the American consulate general (defendant's collective exhibit B) to the effect that there were no restrictions except that buyers were encouraged to sell at prices determined by the manufacturer. However, that evidence is controverted by the affidavits introduced by the plaintiff (exhibits 2, 3, 4, 5, and 6), which establish that the manufacturer's products were sold only to selected wholesalers and retailers in Holland, that the wholesalers were permitted to resell only at the prices fixed by the manufacturer and in their own districts, and that the retailers sold only to actual consumers and at prices fixed by the manufacturer. There is also evidence, which has not been contradicted, that competing manufacturers followed the same practices.

Since restrictions are imposed on the resale of the merchandise and sales are confined to selected purchasers, the market is controlled and no foreign value can be found. *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, T. D. 39158; *United States* v. *H. W. Robinson & Co. et al.*, 19 C. C. P. A. (Customs) 274, T. D. 45436; *United States* v. *Half Moon Mfg. & Trading Co., Inc.*, 28 C. C. P. A. (Customs) 1, C. A. D. 115; *Allied Food Corp. of America* v. *United States*, 29 Cust. Ct. 438, Reap. Dec. 8135.

To sustain its burden of proof, however, plaintiff must not only overcome the presumption of correctness attaching to the appraiser's valuation but establish the correct value of the merchandise. *Harry Garbey* v. *United States*, 24 C. C. P. A. (Customs) 48, T. D. 48332; *G. & H. Transport Co., Inc.* (*Philipp Wirth*) v. *United States*, 27

C. C. P. A. (Customs) 159, C. A. D. 78; *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495. In order to prove export value as a basis for a valid reappraisement, plaintiff must show that such or similar merchandise was freely offered to all purchasers in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States. Section 402 (d), Tariff Act of 1930. According to the evidence herein, no actual sales of this merchandise were made for exportation to the United States to anyone other than the importer. Plaintiff claims, however, that it was freely offered to all purchasers.

The affidavit of G. J. Van Mesdag (plaintiff's exhibit 1) states, among other things, that the manufacturer has no written or oral agreement confining its sales in the United States to the importer and that it has been ready and willing to sell its products to all purchasers in the United States at the prices paid by the importer. Like statements have been held insufficient to establish that merchandise was freely offered for sale to all purchasers for exportation to the United States. *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States*, 28 C. C. P. A. (Customs) 19, C. A. D. 118; *Sears, Roebuck & Co. et al.* v. *United States*, 31 C. C. P. A. (Customs) 36, C. A. D. 246; *Golding Bros. Co., Inc.* v. *United States*, 4 Cust. Ct. 876, Reap. Dec. 4929, affirmed 6 Cust. Ct. 877, Reap. Dec. 5196; *Cabinet Craftsmen, Inc.* v. *United States*, 26 Cust. Ct. 690, Reap. Dec. 8001; *Penson & Co.* v. *United States*, 26 Cust. Ct. 571, Reap. Dec. 7970.

Mr. Van Mesdag stated also that the prices at which the merchandise was sold to the importer "were the prices at which we freely offered such merchandise to all purchasers for exportation to the United States" and produced copies of offers made by the manufacturer to three Dutch firms which made inquiries. Offers may be just as effective as sales in proving export value, but they must indicate that the merchandise was freely offered for sale to all purchasers in accordance with the requirements of the statute. *Robinson & Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 644, T. D. 41486; *Oceanic Trading Co.* v. *United States*, 21 C. C. P. A. (Customs) 146, T. D. 46478; *United States* v. *American Agar & Chemical Co.*, 30 Cust. Ct. 607, A. R. D. 19. The letters attached to the affidavit herein show only that offers were made to three firms upon inquiry by them, not that offers were made to *all* purchasers. There is no evidence that the trade was solicited for orders or that price lists were sent to potential customers. It is significant that while several copies of price lists for domestic sales are in evidence, none has been produced that shows prices for sale for exportation to the United States.

Under these circumstances, the general statement in the affidavit can be considered as no more than a declaration of an essential

ultimate fact and is not substantial evidence that the merchandise was freely offered to all purchasers. *Brooks Paper Company* v. *United States, supra.* The evidentiary facts presented are not sufficient to sustain the affiant's conclusion.

Since the record before me will not support a finding of either foreign value or export value, and since there is no evidence as to United States value or cost of production, I hold that the ends of justice will best be served by restoring the case to the docket for further proof.

It is so ordered.