(Reap. Dec. 10072)

GEO. S. BUSH & Co., INC. *v.* UNITED STATES

Entry No. 865, etc.

(Decided August 28, 1961)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Hadley S. King* and *Norman C. Schwartz* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Samuel D. Spector* and *Daniel I. Auster*, trial attorneys), for the defendant.

WILSON, Judge: This appeal to reappraisement involves the dutiable value of certain impregnated, water-repellent elastic ski fabric

("Ski-Elastic-Cord"), exported from Austria in August 1957, and entered at the port of Portland, Oreg. Plaintiff herein is the customs broker in whose name entry of the merchandise was made for the account of White Stag Manufacturing Co., Portland, Oreg., the actual importer of the goods.

The merchandise in question was appraised at 259.50 Austrian schillings per meter, less 3 per centum, plus 3 per centum for export packing, on the basis of foreign value under the provisions of section 402(c) of the Tariff Act of 1930, as amended. Plaintiff in this action maintains that the proper dutiable value of the involved merchandise is $6.90 per running yard, net packed, f.o.b. Hamburg, Germany, or in the alternative $6.85 per running yard, net packed, f.o.b. Vienna, Austria, on the basis of export value, section 402(d) of the tariff act, the difference of $0.05 per yard representing freight from Vienna, Austria, to Hamburg, Germany.

On behalf of the plaintiff, Mr. Paul Rendi, sales representative in the United States of Wollwaren, A.G., the Austrian manufacturer of the goods under consideration, stated that he has been the sole representative of said exporter since 1956. He testified that Wollwaren manufactures many types of commodities and textiles, but that for the United States trade they export only one commodity, namely, stretch gabardine, which is used for ski wear. The witness stated that this material comes in several qualities, but that only one quality, No. 2004, 46 per centum wool and 54 per centum nylon, was sold in the United States (R. 5). Mr. Rendi further testified that, in 1957, quality No. 2004 was offered and sold to various firms in the United States at $6.90 per running yard, f.o.b. Hamburg, or $6.85 per running yard, f.o.b. Vienna; that the merchandise was not sold on an exclusive basis and sales could be made to anyone; and that the price did not vary according to the quantity purchased. It appears that quality No. 2004 is available in two finishes: Silicon finish and water-repellent (impregnated). Plaintiff's witness stated, however, that the export price was the same for both finishes (R. 7) and that orders solicited by him for the account of Wollwaren were subject to acceptance by said manufacturer in Vienna and were actually accepted there (R. 8–9).

An affidavit of Frank Senk, manager and member of the board of management of Wollwaren, A.G., dated June 7, 1960, was received in evidence as plaintiff's exhibit 1. The affiant therein recites in substance: That he is personally in charge of all the sales systems of the exporting company, as well as of the manufacture of impregnated and silicon-treated "Ski-Elastic-Corden," which is produced and sold by his company in Austria and also exported to other European

countries and to the United States. The said affidavit discloses the difference between silicon-treated cords and impregnated cords as follows: Silicon finish cords require the application of different silicon salts to the fabric which renders the fabric both water-repellent, and also permits removal of certain stains by simple washing with cold water, or in the case of oil and grease spots by using soap and hot water, whereas the impregnated cords consist of the application of a paraffin wax emulsion which makes the fabric merely water-repellent. The affiant therein further recites: That his company offers and sells almost exclusively only siliconized products on the Austrian market and has supplied impregnated cords only in a few exceptional cases; that prices in Austria were graded in different categories, namely, (1) wholesalers, (2) producers, (3) department stores, (4) retail stores and small shops, and (5) tailors, and that within any one of these categories the prices were the same regardless of the quantity actually purchased; that as compared with other Austrian manufacturers Wollwaren's ski fabrics or cords were competitive in quality and at the same price level, differences in prices resulting merely from the class of customers as above outlined; that both impregnated and siliconized fabrics were offered by the manufacturer herein for sale to purchasers in the United States at the same uniform price; that while White Stag Manufacturing Co. was the only concern in the United States to purchase Wollwaren's impregnated fabrics, there was no exclusive agreement between the exporter herein and White Stag Manufacturing Co. with respect to such purchases; and that if other concerns here had desired to purchase the same impregnated elastic cord, the manufacturer would have supplied it at the same price.

The affidavit above referred to (plaintiff's exhibit 1) sets forth two sales lists: First, a list of all sales made to purchasers in Austria in 1957, broken down into the five categories of purchasers as above listed, and, secondly, a list of sales made to purchasers in the United States during the year 1957. Reference to such sales with respect to their application to the issue here involved will be hereinafter made.

The Government introduced in evidence a photostatic copy of a Treasury agent's report (defendant's collective exhibit A (R. 14)), relative to the relationship between the manufacturer and the importer and containing certain data concerning the purchase of merchandise such as here involved, together with photostatic copies of correspondence between said manufacturer and importer, and copies of letters from the importer to Government officials and the customs broker herein relative to the sale of such goods (defendant's collective exhibit B (R. 17)).

Section 402 of the Tariff Act of 1930 defines foreign value and export value as follows:

(c) FOREIGN VALUE. [As amended by the Customs Administrative Act of 1938]—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Section 501 of the Tariff Act of 1930 contains, among other provisions, the following:

* * * The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise. [Now title 28, U.S.C. § 2633.]

To sustain its burden of proof, and overcome this statutory presumption, it is incumbent upon the plaintiff herein, the party challenging the value found by the appraiser in the first instance, to prove the action of the appraiser was erroneous and to establish some other dutiable value as the proper one. To do this, the plaintiff must meet every material issue in the case. *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495, and cases cited therein.

The record discloses that White Stag Manufacturing Co. was the only company to purchase impregnated elastic cord in 1957, while all other companies in the United States which bought elastic cord from the manufacturers herein purchased only siliconized products. The affiant for the plaintiff in the case at bar asserts that if another company in the United States had desired to purchase impregnated elastic such as that sold to White Stag Manufacturing Co. it would have been supplied by the manufacturer at the same price. However, it has been held that evidence of a hypothetical market, or what a seller would do if confronted by conditions that do not exist, should not control over evidence of actual market conditions. *United States* v. *Traders Paper Co. et al.*, 14 Ct. Cust. Appls. 293, T.D. 41909. Accordingly, the statement made in the Senk affidavit, *supra*, to the effect that the manufacturer herein was willing to sell to anyone at

the same price charged to White Stag Manufacturing Co., the importer herein, is no proof of market value or price at the time of exportation of the involved merchandise as required by the statute. *Transatlantic Shipping Co., Inc.* v. *United States*, 28 C.C.P.A. (Customs) 19, C.A.D. 118. See also *United States* v. *Proctor & Co.*, 15 Ct. Cust. Appls. 373, T.D. 42564; *Cabinet Craftsmen, Inc.* v. *United States*, 26 Cust. Ct. 690, Reap. Dec. 8001. It further appears that sales of such merchandise to White Stag Manufacturing Co. were sold at prices only to the importer in question because of the quantity ordered (defendant's collective exhibit A, page 3).

While the affiant in plaintiff's exhibit 1 alleges offers of sale of both elastic products of the exporter, impregnated as well as siliconized, for sale to the United States, the export sales listed in the aforesaid affidavit apparently are only of siliconized fabric and not the impregnated elastic, counsel for plaintiff in its brief, page 7, stated in this connection as follows:

It is therefore apparent that the schedule of 1957 United States sales contained in the Senk affidavit, and Rendi's statement that all 1957 offers and sales in the United States were at the $6.90 figure, both refer to siliconized * * * fabric; * * *.

It appears from the record that the siliconized elastic is not "such" merchandise as that imported. Further, it is not similar to the goods in question, the record disclosing that these products are made of different materials, involving different processes, and serving different purposes. Accordingly, they are not interchangeable and cannot be considered "similar" under the statute for purposes of appraisement. Confirmation as to the dissimilarity between the siliconized and impregnated fabrics may be found in correspondence from the exporter to the importer herein in certain letters, dated May 31, 1958, and July 7, 1958, respectively, part of defendant's collective exhibit B. The record herein thus disclosing that sale of the involved impregnated fabric was made only to the one importer, White Stag Manufacturing Co., I am of opinion that the evidence adduced on behalf of the plaintiff falls short of establishing the essential elements of proof to establish an export value for the involved goods, namely, "the market value or the price, at the time of exportation of such merchandise to the United States, at which such or *similar* merchandise is *freely offered for sale* to *all* purchasers * * * in the *usual wholesale quantities* and in the ordinary course of trade." [Italics supplied.] Plaintiff has failed to establish an export value for "such" merchandise within the statutory requirements and has likewise failed to establish the nonexistence of an export value for "similar" merchandise.

The plaintiff herein, in contending that there is no foreign value under the statute for the involved merchandise, states (plaintiff's brief, page 4) :

* * * The extreme variations in price, from 230 Austrian schillings to 269 Austrian schillings per meter for the impregnated fabric, and from 238 schillings to 285 schillings per meter for the siliconized fabric, obviously unrelated to quantity purchased, *prima facie* indicates that prices were arrived at solely thru the bargaining ability of the individual purchaser.

The defendant, however, in maintaining that a variance in prices for the merchandise for home consumption does not preclude a finding of foreign value for the goods, directs our attention to the holding of our appellate court in *United States* v. *Glanson Co.*, 47 C.C.P.A. (Customs) 110, C.A.D. 740.

In the *Glanson* case, *supra*, the record disclosed that, on or about the date of exportation, the manufacturer of the involved cribbage boards freely offered the merchandise for sale for home consumption in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, at three different price levels which were determined solely by the category of the purchaser and not the quantity purchased, viz, to jobbers and wholesalers, to chain and department stores, and to retailers, other than chain and department stores. The appellate term of this court held that a foreign value could not be ascertained, first, because the manufacturer controlled the resale prices in Canada and hence the merchandise was not freely offered for sale, and, secondly, because there was no single price at which it was offered to all purchasers. In rejecting the latter holding, our appellate court in the *Glanson* case, *supra*, at page 113, stated:

With respect to the holding below that there was no single price at which the merchandise was freely offered for sale to all purchasers, we are of the opinion that the amount at which it was offered to retailers other than chain and department stores constituted such a freely offered price. The lower prices offered to jobbers and wholesalers and to chain and department stores merely represent discounts to favored classes of purchasers. This court has repeatedly held that the existence of such discounts does not preclude the finding of a foreign value. *Adolph Goldmark & Sons Corp.* v. *United States*, 22 CCPA 358, T.D. 47378; *American Shipping Co.* v. *United States*, 29 CCPA 250, C.A.D. 198; *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129, and cases there cited.

In my opinion, the imported merchandise is properly subject to appraisement on the basis of foreign value as alleged by the defendant and as so appraised. In the report of the Treasury representative relative to sales by the exporter herein (defendant's collective exhibit A), based upon examination of the company's books and records by that Government agent in his official capacity, it is stated

that merchandise identical to the subject merchandise (impregnated) is freely offered for sale for home consumption in Austria. It is further stated therein that Mr. Senk, the affiant in plaintiff's exhibit 1, said with respect to merchandise offered and sold in the home market that no pricelists were issued but that the prices are quoted from an office price schedule. It was noted in said report that the schedule in question disclosed prices, effective March 4, 1957, and in force on February 12, 1958, the date of the investigation, as follows: To wholesalers depending on quantities of 25 to 50 meters at S241 per meter, and over 50 meters at S234 per meter; also prices to retailers S259.50, S264, and S269. It thus appears that the lowest price to retailers is the *per se* unit price taken by the appraiser for the merchandise under consideration. The report (defendant's collective exhibit A) further states that a review of the domestic sales of the exporter for the month of March 1957 showed sales at prices ranging from S232 to S259.50 per meter, without regard to the quantity or status of the purchaser.

Further, defendant's collective exhibit B received in evidence contains copies of certain letters from the exporter to the importer herein relative to the sale of elastic cord by the exporter. A letter, dated April 28, 1958, at page 2 thereof, wherein reference is made by the exporter to various prices found by the Treasury agent on the outgoing invoices, states:

The controller (evidently referring to the Treasury Representative) noted down various sales prices which he found in our outgoing invoices and actually, there is among other prices on these invoices also the price of S259.50 per meter. However, at this juncture there ought to be said that this is a price which is being charged here in Austria to retail shops and to tailors purchasing rather small quantities. * * *

In view of the facts disclosed, I find there is substantial evidence to support the value found by the appraiser for the involved goods. In this connection, it should be noted that even had plaintiff shown the claimed export value for "such" merchandise at the prices alleged, the higher foreign value as here disclosed should prevail. Further, if, as alleged by the plaintiff, there is no foreign value for "such" merchandise by reason of the fact that such merchandise was not freely offered to all purchasers in the home market, there is no showing by the plaintiff that there was not a free offering of "similar" merchandise to all purchasers in said market. Accordingly, plaintiff has failed in its burden of proof and the presumption of correctness attaching to the appraiser's finding of value has not been overcome.

For the reasons above set forth, I find as matters of fact:

1. That the involved merchandise consists of ski-elastic fabric exported from Austria during various periods in July, September, October, and November of 1957.

2. That the merchandise in question was sold to White Stag Manufacturing Co., the importer herein, which concern was the exclusive and only purchaser in the United States of such merchandise.

3. That the record herein shows no offers for sale of similar merchandise from Austria to purchasers in the United States during the year 1957.

4. That merchandise identical to the subject merchandise was freely offered for sale for home consumption in the country of exportation.

5. That the evidence adduced by the plaintiff fails to establish that the appraised value is erroneous or that other values claimed by the plaintiff are correct.

I conclude as matters of law:

1. That the value returned by the appraiser, which is presumptively correct, has not been overcome.

2. That the proper value of the merchandise in controversy is the value found by the appraiser.

Judgment will be entered accordingly.